# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ROBERT C. PREAST,

                Plaintiff,

-vs-                                         Case No.  8:08-cv-999-T-24GJK

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      Plaintiff Robert C. Preast (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits and supplemental security income payments.  *See* Doc. No. 1. For the reasons set forth below, it is recommended that the Commissioner's decision be **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g)**.

## I.      BACKGROUND FACTS

      Claimant was born on October 7, 1958.  He was previously employed as a supervisor of Florida Tile until August 24, 1998. R. 157, 213.  In 1987, the Claimant fell off of a kiln at Florida Tile, falling six to eight feet onto his buttock. R. 443.  On May 17, 1990, the Claimant visited the Lakeland Orthopaedic Clinic complaining of low back pain. R. 174.  A couple days prior, he was diagnosed with a T12 compression fracture at the emergency room. *Id.*   X-rays revealed minimal degenerative changes in the lower dorsal and lumbar spine consistent with the

Claimant's age, and a slight wedging of D12 possibly represented a compression fracture. R. 173. The records reveal that the Claimant returned to work, wore a back brace, and was doing well with healing in good position and alignment. R. 172. Ultimately, Dr. Frank P. Murphy opined that Claimant could go back to work with no specific restrictions and he was at maximum medical improvement with an 8% permanent partial disability of the body as a whole because of the fractured 12th dorsolumbar vertebral body. R. 171.

On September 13, 1996, Claimant began treating with Gaetano Urso, D.O., a general practitioner. R. 206. He reported having a numbing sensation in his arms and legs. *Id.* In February and May of 1997, he reported experiencing heart palpitations and stress. *Id.* On May 9, 1997, Dr. Urso diagnosed him with depression and prescribed Xanax. *Id.* The Claimant started undergoing therapy through a work program called ACORN Behavioral Health Care Management Corporation with Dr. Anthony Conti. R. 196-97, 201-02. On March 31, 1999, the Claimant continued to complain of pain in his legs, back and hips and experiencing severe anxiety. R. 193.

On June 16, 1999, Dr. Goss performed a residual functional capacity ("RFC") assessment on the Claimant and opined that he could occasionally lift 20 pounds, 10 pounds frequently, stand and/or walk at least 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and push and/or pull without limits. R. 226. He indicated that Claimant could occasionally climb, balance, stoop and crawl, and never kneel or crouch. R. 227. Dr. Goss opined that the Claimant was capable of sedentary work. R. 230.

On June 22, 1999, Joel B. Freid, Ph.D., P.A., performed a psychological evaluation on the Claimant. R. 212-15. Dr. Freid diagnosed the Claimant with major depression and

generalized anxiety disorder. R. 215. He recommended that the Claimant pursue further mental health treatment in addition to his medication for symptoms of depression and anxiety. *Id.*

On October 7, 1999, Dr. Turk performed an RFC assessment on the Claimant and opined that he could occasionally lift 20 pounds, 10 pounds frequently, stand and/or walk at least 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and push and/or pull without limits. R. 218. He indicated that Claimant could occasionally climb a ramp or stairs, balance, stoop, kneel, crawl, and crouch, and never climb a ladder. R. 219. Dr. Turk opined that the Claimant was capable of sedentary work. R. 222.

On October 26, 1999, Claimant underwent a psychiatric evaluation performed by a Department of Disability Services ("DDS") physician who opined that he was *moderately* limited in the ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) work in coordination with or proximity to others without being distracted by them and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. R. 233-34. The DDS physician offered no marked limitations. *Id.*

On March 21, 2000, Dr. Conti, who treated the Claimant, completed a mental RFC assessment. R. 260-63. Dr. Conti indicated that the Claimant was *moderately* limited in the ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 5) sustain an ordinary routine without special supervision; 6) complete a normal workday and workweek

without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and 7) respond appropriately to changes in the work setting. *Id.* Dr. Conti offered no marked limitations. *Id.*

On May 8, 2002, Dr. Henry L. Dee performed a consultative mental status examination. R. 437-442. Dr. Lee indicated that the Claimant's level of responsiveness did not show obvious effects of pain, medications or drugs. R. 437. His level of psychological distress appeared moderate. *Id.* Claimant's mood was anxious and depressed and he reported feelings of severe depression. R. 438. The Claimant reported three suicide attempts. R. 439. Dr. Lee opined that the Claimant's competency to manage his own affairs is questionable. *Id.* He diagnosed Claimant with Bipolar Disorder. *Id.*

On May 15, 2002, Dr. Jeanne M. McGregor examined the Claimant. R. 443-48. His chief complaints were leg and back pain, anxiety, depression and status post head injury. R. 443. He stated that in 1985, when he worked for Florida Tile, he was hit on the side of his head with a wrench and kicked in the ribs. *Id.* Aside from being given over-the-counter pain medicine from the Florida Tile nurse, no x-rays or other interventions was obtained at that time. *Id.* Dr. McGregor's records indicate that in 1987, the Claimant fell off of a kiln at Florida Tile, falling six to eight feet onto his buttock. *Id.* He was later diagnosed with a fracture of the T12 vertebra, given pain medicine and a back brace and was placed on light duty. *Id.* He complained to Dr. McGregor of pain in his hips, knees and ankles. R. 443-44. In regard to his anxiety, Claimant reported being prescribed Xanax, but after it did not work, he was placed on Valium and Lithium. R. 444. His medications at that time were Hydrocodone, Flexeril, Diazapam, and Lithium. *Id.*

Dr. McGregor stated that Claimant appeared to have a moderately depressed mood as well as a slightly constricted affect. R. 445. She noted no evidence of uncontrolled anxiety or psychosis. *Id.* Dr. McGregor also noted the following: vague pain to palpation across the posterior C-spine with no objective spasm; vague pain to palpation with mild spasm at the paravertebral muscle from L2 to L5 bilaterally; decreased range of motion of the neck and back; decreased range of motion of the shoulders, elbows, hips, and knees bilaterally; and slight decreased strength in the left lower extremity. R. 445-46. Upon review of the lumbosacral spine, Dr. McGregor noted a mild increase in lumbar lardosis, moderate increase in lumbosacral angulation, and minimal multilevel degenerative spurring in the mid lumbar region. R. 448.

On May 31, 2002, Deborah Carter, Ph.D. performed a psychiatric review of the Claimant noting depressive syndrome and bipolar syndrome with moderate limitation in restriction of activities of daily living and difficulties in maintaining concentration, persistence or pace. R. 449-66. She indicated that Claimant was *moderately* limited in the ability to: 1) understand and remember detailed instructions; to maintain attention and concentration for extended periods; 2) work in coordination with or proximity to others without being distracted by them; 3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 4) travel in unfamiliar places or use public transportation; and 5) set realistic goals or make plans independently of others. R. 463-63. She opined that he was *markedly* limited in the ability to carry out detailed instructions. R. 463-64.

The Claimant was examined by Dr. Urso on July 14, 2000; January 12, March 9, and July 6, 2001; and January 22, February 15 and April 23, 2002. R. 468-72. Aside from prescribing the

Claimant medicine, Dr. Urso did not recommend surgical intervention or an alternative mode of treatment. *Id.* On June 13, 2002, following the seven visits over the course of two and one-half years, Dr. Urso submitted a letter to the DDS stating that the Claimant was permanently disabled due to his chronic back pain, symptoms of peripheral neuropathy in his legs, and emotional disturbance. R. 467.

On July 17, 2002, bilateral x-rays of the Claimant's knees were negative. R. 476. An x-ray of his right hip revealed slight narrowing of the hip joints bilaterally with no fractures or other abnormalities. *Id.*

On July 18, 2002, the Claimant underwent an RFC assessment wherein the physician indicated he could occasionally lift 20 pounds, 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and push and/or pull without limits. R. 478. The physician opined that Claimant could occasionally stoop or crouch. R. 479.

On October 21, 2002, Jeffrey L. Prickett, Psy.D. performed a psychiatric review of the Claimant noting an affective disorder and bipolar syndrome with *moderate* limitation in restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace, and one or two episodes of decompensation. R. 485-99. He indicated that the evidence suggests some deficits resulting from Claimant's mental condition that do not meet or equal a listing. R. 499.

Dr. Prickett indicated that Claimant was *moderately* limited in the ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; 5) work in

coordination with or proximity to others without being distracted by them; 6) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; 7) interact appropriately with the general public; and 8) respond appropriately to changes in the work setting. R. 500-01. He offered no marked limitations. *Id.*

On October 30, 2002, Dr. Ricardo Cervantes performed a consultative medical examination. R. 504-07. Dr. Cervantes noted Claimant's back pain, hypertension, and depression with suicidal ideation. R. 505. He stated:

> This claimant has severe back pain that has not been adequately diagnosed and treated. He needs a magnetic resonance imaging ("MRI") to further evaluate his back pain. He also needs to be seen by a psychiatrist to control his depression and suicidal thoughts. I wish him the best of luck.

R. 506.

On November 25, 2002, a DDS physician performed an RFC assessment and opined that Claimant could occasionally lift 20 pounds, 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and push and/or pull without limits. R. 478. The physician opined that Claimant could frequently climb, balance, stoop, kneel, crouch, and crawl. R. 508-15.

On November 29, 2004, Tracey G. Henley, Psy.D., performed a psychological evaluation and noted that the Claimant "demonstrated [an] inconsistent effort throughout the evaluation and the current results are questionable as he expressed so many concerns and his MMPI-2 was found to be invalid due to his pattern of responses." R. 518. She stated: "It is likely that he is exaggerating his level of symptomology in order to obtain benefits." R. 519. Dr. Henley

indicated that he did have difficulty concentrating and focusing and he reported severe pain symptoms. *Id.* Her diagnostic impression was panic disorder, bipolar disorder (by history), rule out psychotic disorder, not otherwise specified, and rule out malingering. *Id.*

On December 2, 2004, the Claimant was examined by Dr. Jesse Morgan. R. 523-27. After x-raying the Claimant's lumbar spine, Dr. Morgan stated there is a suggestion of an old injury to the body of T12 with some asymmetry and in continuity in the superior end plate of T12, but there are no signs of spondylolosthesis or spondylosysis. R. 523. Otherwise, the x-rays and exam were unremarkable. *Id.* Dr. Morgan assigned Claimant no physical limitations. R. 524-27.

On December 4, 2004, Dr. Henley completed a medical source statement for the DDS and opined as follows:

1. Claimant's ability to understand, remember, and carry out instructions is affected by his impairment;

2. He is *moderately* limited in the ability to understand and remember short, simple instructions and carry out short, simple instructions;

3. He is *markedly* limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, and to make judgments on simple work-related decisions;

4. He is *markedly* limited in the ability to interact appropriately with the public, with supervisor(s), and with co-workers;

5. He is *extremely* limited in the ability to respond appropriately to work pressures in a usual work setting; and

6. He is *extremely* limited in the ability to respond to changes in a routine work setting.

R. 520-21. Dr. Henley noted that Claimant was experiencing "severe anxiety" and having panic attacks on a regular basis. R. 521. She also recommended a psychiatric evaluation. R. 519. Given the Claimant's mental status, Dr. Henley recommended that he receive assistance in managing his financial affairs. R. 522.

## II.   ADMINISTRATIVE PROCEEDINGS

On March 30, 1999, Claimant protectively filed an application for disability insurance benefits and supplemental security income payments alleging disability as of May 15, 1998. R. 98-100, 157-59. On April 7, 2000, Administrative Law Judge ("ALJ") Walter S. Crumbley ("Crumbley") held an administrative hearing on the Claimant's claim for disability. R. 49-76. The Claimant and vocational expert ("VE") Gerald Wili testified at the hearing. *Id.*

On December 11, 2000, ALJ Crumbley issued a decision that Claimant was not disabled. R. 16-26. Upon request by the Claimant, the Appeals Council reviewed and affirmed ALJ Crumbley's decision. R. 4-5. On June 7, 2002, Claimant filed an appeal before the United States District Court. *See* Case No. 8:02-cv-1016-SDM, Doc. No. 1. Upon motion by the Commissioner, the Honorable Steven Merryday reversed and remanded the case to the Commissioner for the following reasons:

> The [ALJ] will re-assess the medical evidence, re-evaluate [Claimant]'s residual functional capacity and obtain supplemental vocational expert testimony in response to a hypothetical question which accurately reflects the functional limitations resulting from [Claimant]'s impairments.

*Id.*, Doc. Nos. 7, 8; R. 354. On July 24, 2003, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an administrative law judge with directions to:

1.  Obtain additional evidence concerning the Claimant's impairment(s) in order to complete

the administrative record concerning consultative examinations and existing medical evidence, including a consultative orthopedic medical examination and a medical assessment of the Claimant's ability to perform work-related activities.

2. Re-evaluate the Claimant's RFC, including the opinions of Dr. Urso, Dr. Gross, and Dr. Turk, especially in the area of the Claimant's physical functional limitations.

3. Obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on the Claimant's occupational base by forming appropriate hypothetical questions to the VE, asking the VE to identify examples of appropriate jobs and resolving any conflicts between the occupational evidence provided by the VE and information in the Dictionary of Occupational Titles ("DOT").

R. 355-56. While the appeal was pending, the Claimant filed a subsequent application for disability insurance benefits on February 13, 2002, alleging disability as of December 2000. R. 303, 385. The Claimant stated that his leg and back pain, anxiety and depression limit his ability to work. R. 385.

On February 3, 2005, ALJ Rich Ouellette ("Ouellette" or the "ALJ") held an administrative hearing on the Claimant's claim for disability. R. 317-53. The Claimant and VE Teresa Manning testified at the hearing. *Id.* At the hearing, Claimant testified that he was currently taking Tamazepam for sleep, Cyclobenza for muscle spasms, Tylenol for headaches, Hydroco[done] for pain, Lithium for depression, Neurontin for nerves, and Xanax for anxiety. R. 333-34. Claimant stated that the medications make him feel week, unstable, groggy, dizzy, and have slurred speech. *Id.* During the VE's testimony, the ALJ posed the following hypothetical question:

> Assume that an individual who has the same age, education, and work experience as the Claimant, has the following [RFC]: capable of light work with a sit/stand option, with an occasional limitation for prolonged standing, bending, and stooping and lifting above shoulder height. He also has an occasional limitation for concentrating on tasks assigned but capable of performing simple, routine, repetitive talks. Could he do his past job or any other jobs?

R. 346. The VE responded:

> Past job, no. Other jobs that would meet that hypothetical would be parking lot cashier, copy machine operator, and gate guard.

*Id.* On November 23, 2005, ALJ Ouellette issued a decision that Claimant was not disabled. R. 303-13. He made the following findings:

1. The Claimant's status post T12 compression fracture and depression are considered "severe". R. 311.

2. The Claimant's medically determinable impairments do not meet or medically equal one of the listed impairments. R. 312.

3. The Claimant has the RFC to perform the exertional requirements of light work with a sit/stand option and occasional limitations for prolonged standing, bending, stooping and lifting above shoulder height. He also has occasional limitations for focusing on tasks assigned, but is capable of performing simple, routine, repetitive tasks. R. 309.

4. In determining the Claimant's RFC, the ALJ considered his concentration difficulties due to his pain and mental impairments along with his physical allegations. *Id.*

5. The Claimant's subjective allegations are inconsistent with some of his prior statements and are not fully credible. *Id.*

In determining the Claimant's RFC, the ALJ noted that he did not give Dr. Urso's opinion regarding the Claimant's inability to work controlling weight because it was not supported by the

substantial evidence of the record. R. 305. He stated the following:

> First, there is very little evidence of medical treatment, further hospitalizations, emergency room visits or mental health crisis since the last decision. Dr. Urso appears to be the claimant's only treating physician. He opines that the claimant's physical and mental impairments are disabling, yet never refers the claimant to mental health or orders further diagnostic tests to evaluate the source of his physical complaints. In short, he premised his conclusion primarily on the subjective complaints of the claimant whose credibility is in issue and will be discussed below. Furthermore, Dr. Urso's opinion regarding the claimant's ability to work is an opinion on an issue reserved for the Commissioner. Therefore, the opinion is not entitled to controlling weight or special significance.

*Id.* With this said, the ALJ did not specify what, if any, weight was accorded to Dr. Urso's opinion. The ALJ accorded *some* weight to the opinions of Dr. McGregor, Dr. Cervantes, Dr. Freid, Dr. Dee, and Dr. Henley. R. 306-07. The ALJ stated the following with respect to each physician:

> I gave some weight to Dr. McGregor's findings to the extent that they are consistent with the findings in my RFC. However, his findings do not support a conclusion that the claimant is totally disabled.
> . . .
>
> I gave some weight to Dr. Cervantes [sic] conclusions, in that they were consistent with his findings on exam.
> . . .
>
> I gave some weight to Dr. Freid's conclusions to the extent that the claimant required further mental health treatment. However, Dr. Fried's findings did not support a finding that the claimant's mental impairments precluded him from all work activity, nor did he opine that this was the case.
> . . .
>
> I gave some weight to Dr. Dee's conclusions as they are supported by his findings which are generally consistent with the majority of other psychological exams.
> . . .

> I gave some weight to Dr. Henley's conclusions as they were consistent
> with her findings on exam and the claimant's behavior during the
> evaluation.

*Id.* He stated that he did not give controlling weight to Dr. Conti's conclusions because they

were disproportionate to the overall objective medical status exam findings of other treating and

examining mental health sources. R. 507. Also, the ALJ did not give the opinion of Dr. Morgan

controlling or great weight because evidence supports a finding that the Claimant's physical

impairments result in some degree of functional limitations and are severe. *Id.* Again, the ALJ

did not state what weight was accorded these physicians aside from stating that they did not

receive controlling weight.

In considering the state agency opinions, the ALJ stated:

> State agency psychologist at the initial level concluded that the claimant
> suffered from an affective and anxiety related disorder resulting in
> moderate limitations of social functioning. The psychologist at the
> reconsideration level concluded that the claimant had moderate
> limitations in activities of daily living and concentration and marked
> limitations in the ability to carry out detailed instructions. A third state
> agency psychologist concluded that the claimant had moderate
> limitations in all three areas of functioning with one or two episodes of
> decompensation. However, the psychologist concluded that the claimant
> was able to understand, remember and carry out simple instructions,
> make simple decisions and do routine talks that were within his physical
> limits provided he had a supportive supervisor and work-setting. State
> agency medical consultants concluded that the claimant was able to
> perform a restricted range of light work activity with varying degrees of
> postural limitations.

R. 308. In assessing the Claimant's credibility, the ALJ noted the following:

> The claimant's subjective allegations are inconsistent with some of his
> own prior statements . . . The Claimant reports suffering from chronic
> neck and back pain due to a T-12 fracture sustained in early 1987, yet in
> May 2002, he reports being hit on the head with a wrench and kicked in
> the ribs in 1985. This assault is never mentioned to any examiner and is
> only mentioned after the first hearing. It seems logical that the claimant

-13-

would have mentioned an assault of this magnitude to at least one of the examining physicians or brought it up at the first hearing, yet he did not. His only explanation was that he was a loyal employee and was embarrassed by the incident. I do not find this explanation credible. The claimant also mentions being involved in a motor vehicle accident as a teenager, yet this is not mentioned until October 2002 at exhibit 23F.

. . .

The claimant reports different dates that the accident occurred resulting in his T-12 fracture. Exhibit 1F/p 6 notes a date of May 1990. Exhibit 15F & 23F indicate that he reported it occurring in 1987. At exhibit 25F, he says the accident occurred in 1983. Records between 1982 and 1991 at exhibit 3F make no mention of this fall. Exhibit 13F describes the claimant's T-12 fracture as asymptomatic. An August of 1990, a neurologist concluded that the claimant could be back working with no restrictions (Ex 13F/p 3). A CT scan in January of 1991 found no significant bony abnormality. In May 2002, a neuropsychiatrist noted the claimant's gait and posture were normal with unremarkable motor behavior. The claimant reported a vague feeling of unsteadiness, yet the neurologist found no noticeable evidence of unsteadiness. Dr. Morgan's CE in December 2004 made the same observations (Ex 26F). Counsel for the claimant criticizes Dr. Morgan's report classifying it has an "absurdity" in light of the medical evidence of record, then cites only to Dr. Urso as support yet fails to reconcile the contrary filings at 1F, 15F and 13F or the inconsistent complaints noted by the claimant outlined above.

With regards to the claimant's psychological impairments, the evidence does show that the claimant received mental health treatment since early 1987. Progress notes in 1997 document that he missed work for short periods because of stress. Then there is a gap in treatment from 1997 to 1999. The DDS evaluation at exhibit 5F noted a diagnosis of severe depression, but reported no ongoing treatment. A vocational rehab exam at exhibit 11F noted a GAF of 65. This is the most reasonable assessment. This assessment and Dr. Henley's description contrasted by Dr. Morgan's description clearly show inconsistencies in the severity of the claimant's mental impairments. Dr. Henley noted an invalid MMPI-II and was concerned with malingering.

R. 309-10.

After a request by the Claimant, the Appeals Council denied review of ALJ Ouellette's

decision. R. 272-74. On June 7, 2002, Claimant filed an appeal before this Court. Doc. No. 1. On October 3, 2008, Claimant filed his brief in opposition of the Commissioner's decision to deny him benefits. Doc. No. 9. On December 2, 2008, the Commissioner filed its memorandum of law in opposition to the Claimant's. Doc. No. 10. The appeal is ripe for a determination.

## III.   THE PARTIES' POSITIONS

Claimant assigns five errors to the Commissioner. Doc. No. 9. First, Claimant argues that improper weight was assigned to the opinion of Dr. Urso. *Id.* at 5. Second, the Claimant maintains that the ALJ improperly substituted his opinion for that of a medical doctor. *Id.* at 11. Third, Claimant maintains that the ALJ erred in failing to determine whether all of the mental diagnoses were severe impairments. *Id.* at 10. Fourth, Claimant states that the ALJ failed to properly assess the Claimant's pain and credibility. *Id.* at 12. Finally, the Claimant argues that the ALJ posed an improper hypothetical question to the VE. *Id.* at 1-5.

The Commissioner argues that substantial evidence supports his decision to deny disability. Doc. No. 10. First, the Commissioner maintains that the ALJ properly determined that Dr. Urso's opinion was not supported by substantial evidence. *Id.* at 6-9. Second, the Commissioner argues that the ALJ did not substitute his opinion for that of Dr. Urso. *Id.* at 7. Third, the Commissioner states that the ALJ did not err in finding that Claimant's mental diagnoses were not severe impairments. *Id.* at 9-10. Fourth, the Commissioner argues that the ALJ properly considered Claimant's credibility and subjective complaints of pain. *Id.* at 11-13. Finally, the Commissioner maintains that substantial evidence supports the ALJ's RFC assessment and hypothetical question. *Id.* at 15.

IV.    **LEGAL STANDARDS**

    A.    **THE ALJ'S FIVE-STEP DISABILITY ANALYSIS**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical or other

evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments

meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is

not disabled.  If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience.  20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

B.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may

be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[1] In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new

---

[1] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1) that there is new, non-cumulative evidence; 2) that the evidence is material —  relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).  A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.[2]

## V.   <u>ANALYSIS OF ALLEGED ERRORS</u>

### A.   **Whether the ALJ Erred in Evaluating the Various Medical Opinions and Improperly Substituted His Medical Opinion for That of Dr. Urso**

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability.  The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error.  *Sharfarz v.*

---

[2] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Id*.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  *Id.*

*Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ stating the specific weight given to different medical opinions and the reasons therefore, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[3] Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005). "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269. Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The Claimant argues that the ALJ did not have good cause to not give Dr. Urso's opinion controlling weight. Doc. No. 9 at 5-9. Claimant also maintains that the ALJ substituted his opinion for those of the treating physicians. Doc. No. 9 at 11-12. As set forth above, the ALJ concluded Dr. Orso's opinion that the Claimant is permanently disabled is not supported by substantial evidence of record. R. 305. He stated that there was "very little evidence of medical treatment, further hospitalizations, emergency room visits or mental health crisis since the last

---

[3] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

decision." *Id.* Dr. Urso "opines that the claimant's physical and mental impairments are disabling, yet never refers the claimant to mental health or orders further diagnostic tests to evaluate the source of his physical complaints." *Id.* The ALJ maintains that Dr. Urso based his conclusion mainly on the subjective complaints of the Claimant "whose credibility is in issue". *Id.* Finally, the ALJ noted that Dr. Urso's opinion regarding Claimant's ability to work is an opinion reserved for the Commissioner. *Id.* Therefore, he stated that the opinion of Dr. Urso was not entitled to controlling weight or special significance. *Id.*[4]

The Court does not dispute that the ALJ provided good cause to not accord Dr. Urso's opinion *controlling* weight. Dr. Urso, a general practitioner, was Claimant's treating physician, yet he never recommended alternative treatment aside from prescribing medication to the Claimant for his back pain and he did not refer the Claimant to a mental health specialist. Maintaining that the Claimant's impairments prevent him from being employable seems inconsistent with the conservative medical treatment actually provided. Thus, good cause exists to not accord his opinion controlling weight. The responsibility for determining a complainant's RFC rests solely with the Commissioner. 20 C.F.R. §§404.1513(b)(6) (". . . the lack of the medical source statement will not make the report incomplete"); 20 C.F.R. §§404.1527(e)(2), 416.927(e).[5] Thus, the ALJ was not obligated to accept Dr. Urso's statement as to the Claimant's

---

[4] The ALJ accorded *some* weight to the opinions of Dr. McGregor, Dr. Cervantes, Dr. Freid, Dr. Dee, and Dr. Henley. R. 506-07. He stated that he did not give controlling weight to Dr. Conti's conclusions because they were disproportionate to the overall objective medical status exam findings of other treating and examining mental health sources. R. 507. The ALJ did not give the opinion of Dr. Morgan controlling or great weight because evidence supports a finding that the Claimant's physical impairments result in some degree of functional limitations and are severe. *Id.*

[5] "We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . ., your [RFC] . . ., or the application of vocational factors, the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2).

disability. However, the ALJ was required specify the weight given Dr. Urso's opinion, which he did not do. *Sharfarz*, 825 F.2d at 279. Simply stating that his opinion did not receive controlling weight does not articulate clearly to the reviewing court what, if any, weight was actually given. The ALJ failed to specify the amount of weight given Dr. Urso's, Dr. Conti's or Dr. Morgan's opinions aside from stating they were not entitled controlling weight. More troubling to the Court is the fact that Drs. Urso and Conti were the only physicians to treat the Claimant for a period of time, establishing a relationship with him. Yet, the Court does not know precisely the weight accorded to their opinions and conclusions, which, in turn, makes it impossible for the Court to determine whether the ALJ's decision is supported by substantial evidence. *Hudson*, 755 F.2d at 786; *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) ("We decline . . . to affirm because some rationale might have supported the ALJ's conclusion.").

The Court notes that with the remaining physician opinions, the ALJ maintains that he

---

"Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." Social Security Ruling 88-13.

Social Security Ruling 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Id*. (emphasis added).

accorded some weight to their opinions.  In doing so, the ALJ provides the following reasons:

> I gave <u>some weight</u> to Dr. McGregor's findings to the extent that they are consistent with the findings in my RFC.  However, his findings do not support a conclusion that the claimant is totally disabled.
>
> . . .
>
> I gave <u>some weight</u> to Dr. Cervantes [sic] conclusions, in that they were consistent with his findings on exam.
>
> . . .
>
> I gave <u>some weight</u> to Dr. Freid's conclusions to the extent that the claimant required further mental health treatment.  However, Dr. Fried's findings did not support a finding that the claimant's mental impairments precluded him from all work activity, nor did he opine that this was the case.
>
> . . .
>
> I gave <u>some weight</u> to Dr. Dee's conclusions as they are supported by his findings which are generally consistent with the majority of other psychological exams.
>
> . . .
>
> I gave <u>some weight</u> to Dr. Henley's conclusions as they were consistent with her findings on exam and the claimant's behavior during the evaluation.

R. 306-07 (emphasis added).[6]  The ALJ does not specify with sufficient particularity what portion of these physicians' opinions he accords weight and why.  Rather, he provides a generic statement of "some" approval of each opinion "to the extent" or "because" it is consistent with the record as a whole or his own RFC determination.  This does not provide the reviewing Court with the means to make an informed decision as to whether the ALJ's decision is supported by

---

[6] The problem with generic statements about granting some weight to a particular doctor's opinions is heightened where the doctor's opinion contains conflicting information.  For example, Dr. Henley expressed concern about the Claimant malingering, yet thereafter found him markedly limited in six categories of functioning and extremely limited in two categories of functioning. R. 520-21. The Court notes that the ALJ partially addressed the conclusions of Dr. Henley by indicating that she was concerned with malingering. R. 307. The ALJ did not mention her opinion that the Claimant is *markedly* limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, and to make judgments on simple work-related decisions and in the ability to interact appropriately with the public, with supervisor(s), and with co-workers; and *extremely* limited in both the ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting. R. 521.

substantial evidence. Instead, it puts this Court in the position of inappropriately re-weighing the evidence. *See Owens*, 748 F.2d at 1516 ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[7] Accordingly, it is recommended that the Court find the ALJ erred at this step of the analysis.

### B. Whether the ALJ Improperly Analyzed the Claimant's Impairments

As previously discussed, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *Stratton v. Bowen*, 827 F.2d 1447 (11th Cir. 1987).[8] By definition, this inquiry is a "threshold" inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). "It allows only claims based on the most trivial impairments to be rejected." *Id.* The burden of proof is on the claimant, and he "need show only that [his] impairment is not so slight and its effect not so minimal. *McDaniel*, 800 F.2d at 1031. He carries a "mild" burden. *Id.* An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

---

[7] Dr. Henley recommended further psychiatric evaluation. R. 519. The ALJ has the duty to develop a full and fair record, which he failed to do in light of the fact that the only mental health professional to recently evaluate Claimant questioned his ability to manage his own affairs. R. 439, 522. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).

[8] 20 C.F.R. § 416.920(c) states: If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison*, 814 F.2d at 588-89; *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega*, 265 F.2d at 1219.

As set forth above, the ALJ found that the Claimant has the following severe impairments: T12 compression fracture and depression. R. 311. The Claimant maintains that the ALJ erred in not addressing the diagnoses of anxiety and bipolar disorder. Doc. No. 9 at 10. With respect to bipolar disorder, the Claimant did not include this as a disabling factor on his disability application. *See* R. 385. Furthermore, when asked whether his bipolar disorder had continued or changed, the Claimant testified that it had ceased for about four months and there were no longer any manic phases, he was just depressed. R. 333. Accordingly, it appears Claimant did not raise bipolar disorder in his application or present evidence of a severe impairment relating to that condition. *McDaniel*, 800 F.2d at 1031.

In addressing the Claimant's continued complaints and diagnoses of anxiety, the Court is concerned as to whether the ALJ fully considered this alleged impairment. Although the ALJ discusses each medical opinion that addressed the Claimant's anxiety, the ALJ does not make any particular finding as to whether the Claimant suffered from anxiety, and, if so, what effect, if

any, his anxiety symptoms have on his ability to perform work activities. Thus, the ALJ did not make it clear to this Court that he considered all alleged impairments, both individually and in combination, and did not make a specific and well-articulated finding as to the effect of a combination of impairments when determining whether Claimant is disabled. *Jamison*, 814 F.2d at 588-89; *Davis*, 985 F.2d at 534. This error, alone, requires remand. *Vega*, 265 F.2d at 1219.

The Claimant also states that the ALJ failed to analyze the side effects of his medications. *Id.* Claimant does not request any specific relief or cite to any case law or regulatory support for this alleged error, but does raise it as an issue. *Id.* In the Eleventh Circuit, the ALJ has the duty to develop a full and fair record even when the claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (ALJ's duty to develop a full and fair record exists whether or not the applicant is represented). In *Rease v. Barnhart*, 422 F.Supp.2d 1334, 1372 (N.D. Ga. 2006), the court explained the connection between the claimant's burden and the ALJ's duty as follows:

> Although the burden of proof is on the claimant to prove disability, the ALJ is under a duty to conduct a full and fair inquiry into all the matters at issue. *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir.1981). Thus, in general, the claimant has the burden of obtaining his medical records and proving that he is disabled. 20 C.F.R. § 404.1512(a) and (c). On the other hand, the Commissioner (ALJ) has the responsibility to make every reasonable effort to develop the claimant's complete medical history, for at least the twelve months preceding the month in which the claimant filed his application and, if applicable, for the twelve month period prior to the month in which he was last insured. 20 C.F.R. § 404.1512(d).
>
> . . .
>
> When the medical evidence is inadequate for the Commissioner to determine whether the claimant is disabled, the Commissioner has the responsibility to re-contact the claimant's treating physician(s) or other medical source(s) and determine whether the additional information the

> ALJ needs is available. 20 C.F.R. § 404.1512(e). If the additional needed
> medical evidence is not readily available, then the ALJ should obtain a
> consultative examination. 20 C.F.R. §§ 404.1517 and 416.917; *Sellers v.
> Barnhart*, 246 F.Supp.2d 1201 (M.D.Ala.2002); *Holladay v. Bowen*, 848
> F.2d 1206, 1210 (11th Cir.1988); *Caulder v. Bowen*, 791 F.2d 872 (11th
> Cir.1986); *compare Murray v. Heckler*, 737 F.2d 934 (11th Cir.1984).

*Id.* at 1372. In *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir. 1981), the Eleventh Circuit held

that the ALJ failed in his duty to fully develop the record because "he neither elicited testimony

nor made any findings regarding the effect of [claimant]'s prescribed medications upon her

ability to work." *Id.* at 737. In *Cowart*, the court noted the claimant's testimony at the

administrative hearing that she was "kind of zonked most of the time" as a result of taking her

medications. *Id.* Thereafter, the court stated: "It is conceivable that the side effects of

medication could render a claimant disabled or at least contribute to a disability." *Id.* The Court

quoted *Figueroa v. Secretary of HEW*, 585 F.2d 551 (1st Cir. 1978), which held:

> The present record contains no medical evidence regarding whether the
> appellant's medication was in "unusually large doses" or whether its side
> effects might conceivably be disabling. While appellant's claim might
> be exaggerated, a layman is in no position to make any such
> determination on this record. It would have been appropriate for the
> [ALJ] to have sought further medical evidence, or to have made some
> further inquiry, since appellant raised the question. *See Thompson
> v.Califano*, 556 F.2d 616, 618 (1st Cir. 1977); *Miranda v. Secretary*, 514
> F.2d 996 (1st Cir. 1975). At the very least, the [ALJ] should have made
> a finding on appellant's claim regarding side effects, making it possible
> for a reviewing tribunal to know that the claim was not entirely ignored.

*Id.* (quoting *Figueroa*, 585 F.2d at 554).

At the hearing, the ALJ went through each of the prescriptions currently prescribed to the

Claimant and asked whether he had any side effects from them. R. 333-334. The Claimant

testified that he was currently taking Tamazepam for sleep, Cyclobenza for muscle spasms,

Tylenol for headaches, Hydroco[done] for pain, Lithium for depression, Neurontin for nerves,

and Xanax for anxiety. R. 333-34. Claimant stated that the medications make him feel week, unstable, groggy, dizzy, and have slurred speech. It is recommended that the case be remanded on the basis that the Court is unable to determine whether substantial evidence supports the ALJ's decision. In his decision, the ALJ does not specifically mention the side effects of Claimant's medications. More importantly, he never made a finding regarding whether the side effects of Claimant's medication might conceivably be disabling. *Cowart*, 662 F.2d at 737; *Figueroa*, 585 F.2d at 554. Since Claimant raised the issue of the side effects of his medication, the ALJ should have more fully developed the record on the issue. *Cowart*, 662 F.2d at 737; *Figueroa*, 585 F.2d at 554; *Graham*, 129 F.3d at 1422. Therefore, it is recommended that the Court find the ALJ failed in his duty to fully develop the record.

### C. Whether the ALJ Properly Evaluated Claimant's Subjective Complaints of Pain

In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be: 1) evidence of an underlying medical condition and either 2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or 3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).[9] "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other

_____

[9] "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." Social Security Ruling 88-13.

symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.[10] Thus, once the pain standard is satisfied, the issue becomes one of credibility.

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding <u>with substantial supporting evidence in the record</u>. *Id.* at 1562 (emphasis added). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Id.* The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id.* If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1562 (*quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.

---

[10] Social Security Ruling 96-7p provides: "2. <u>When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established</u>, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.
3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.* (emphasis added).

1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court)). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.

With respect to the Claimant's complaints of pain, the ALJ stated that he considered "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR §§ 404.1529 and 416.929, and Social Security Ruling 96-7p." R. 308. The ALJ then evaluated each of the state agency opinions at the initial and reconsideration levels, together with the subjective testimony of the Claimant. R. 308-09. The ALJ ultimately discredited the Claimant's testimony and stated the following in support of his decision:

> The claimant's subjective allegations are inconsistent with some of his own prior statements . . . The Claimant reports suffering from chronic neck and back pain due to a T-12 fracture sustained in early 1987, yet in May 2002, he reports being hit on the head with a wrench and kicked in the ribs in 1985. This assault is never mentioned to any examiner and is only mentioned after the first hearing. It seems logical that the claimant would have mentioned an assault of this magnitude to at least one of the examining physicians or brought it up at the first hearing, yet he did not. His only explanation was that he was a loyal employee and was embarrassed by the incident. I do not find this explanation credible. The claimant also mentions being involved in a motor vehicle accident as a teenager, yet this is not mentioned until October 2002 at exhibit 23F.
>
> . . .
>
> The claimant reports different dates that the accident occurred resulting in his T-12 fracture. Exhibit 1F/p 6 notes a date of May 1990. Exhibit 15F & 23F indicate that he reported it occurring in 1987. At exhibit 25F, he says the accident occurred in 1983. Records between 1982 and 1991 at exhibit 3F make no mention of this fall. Exhibit 13F describes the claimant's T-12 fracture as asymptomatic. An August of 1990, a neurologist concluded that the claimant could be back working with no

restrictions (Ex 13F/p 3). A CT scan in January of 1991 found no significant bony abnormality. In May 2002, a neuropsychiatrist noted the claimant's gait and posture were normal with unremarkable motor behavior. The claimant reported a vague feeling of unsteadiness, yet the neurologist found no noticeable evidence of unsteadiness. Dr. Morgan's CE in December 2004 made the same observations (Ex 26F). Counsel for the claimant criticizes Dr. Morgan's report classifying it has an "absurdity" in light of the medical evidence of record, then cites only to Dr. Urso as support yet fails to reconcile the contrary filings at 1F, 15F and 13F or the inconsistent complaints noted by the claimant outlined above.

With regards to the claimant's psychological impairments, the evidence does show that the claimant received mental health treatment since early 1987. Progress notes in 1997 document that he missed work for short periods because of stress. Then there is a gap in treatment from 1997 to 1999. The DDS evaluation at exhibit 5F noted a diagnosis of severe depression, but reported no ongoing treatment. A vocational rehab exam at exhibit 11F noted a GAF of 65. This is the most reasonable assessment. This assessment and Dr. Henley's description contrasted by Dr. Morgan's description clearly show inconsistencies in the severity of the claimant's mental impairments. Dr. Henley noted an invalid MMPI-II and was concerned with malingering.

R. 509-10. The ALJ properly applied the Eleventh Circuit pain standard and concluded that objective medical evidence did not support the Claimant's subjective complaints of pain. Thereafter, the ALJ provided sufficient reasoning in discrediting the Claimant's testimony. Accordingly, it is recommended that the Court find the ALJ did not err in analyzing the Claimant's complaints of pain.

### D. Whether the ALJ's Hypothetical Question Posed to the VE is Supported by Substantial Evidence

The Claimant is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully

assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ found that the Claimant was capable of performing the exertional requirements of light work with a sit/stand option and occasional limitations for prolonged standing, bending, stooping and lifting above shoulder height and has occasional limitations of focusing on tasks assigned, but is capable of performing simple, routine, repetitive tasks. R. 312. The ALJ posed the following hypothetical question to the VE:

> Assume that an individual who has the same age, education, and work experience as the Claimant, has the following [RFC]: capable of light work with a sit/stand option, with an occasional limitation for prolonged standing, bending, and stooping and lifting above shoulder height. He also has an occasional limitation for concentrating on tasks assigned but capable of performing simple, routine, repetitive talks. Could he do his past job or any other jobs?

R. 346. The VE responded:

> Past job, no. Other jobs that would meet that hypothetical would be parking lot cashier, copy machine operator, and gate guard.

*Id.* The hypothetical question accurately reflects the RFC determination made by the ALJ of Claimant's ability to perform the requirements of light work. However, because the Court is unable to determine whether the ALJ's RFC assessment is supported by substantial evidence (see above), the Court also cannot determine whether he posed an appropriate hypothetical question. Therefore, it is recommended that the case be remanded to the ALJ for further inquiry into the Claimant's RFC.

## VI.    CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED and REMANED under sentence four of 42 U.S.C. § 405(g)** and the Clerk be directed to close the case and return the record to the Tampa division.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 20, 2009.



_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies Furnished to:

The Honorable Susan C. Bucklew

Roger W. Plata
Roger W. Plata, PA
3510 First Ave. N. – Suite 129
P.O. Box 13903
St. Petersburg, Florida   33713

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida            33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Richard E. Ouellette
Administrative Law Judge
c/o Office of Hearings and Appeals
1000 N. Ashley Dr.
The Times Bldg.
Suite 200
Tampa, Florida          33602